UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN D. LUMMIS and CYNTHIA MacBETH, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:04-cv-0080-DFH-VSS |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

ENTRY ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND MOTION TO STRIKE

Plaintiffs' house was destroyed by fire. Defendant State Farm Fire and Casualty Company insured the house but denied payment on the policy because it determined the fire was caused by an act of arson procured by plaintiff John Lummis. Plaintiffs sued State Farm for breach of the insurance contract and for bad faith denial of their claim. State Farm apparently concedes there are triable, disputed issues concerning whether Lummis was in fact responsible for the fire, but State Farm has moved for partial summary judgment on the plaintiffs' bad faith claim. State Farm has also moved to strike portions of the plaintiffs' surreply and supporting affidavit. For the reasons explained below, State Farm's motions are granted.

*Standard for Summary Judgment*

Under Rule 56(c) of the Federal Rules of Civil Procedure, the court should grant summary judgment if and only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. On a motion for summary judgment, the moving party must first come forward and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which the party believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

This court's Local Rule 56.1 requires parties moving for summary judgment to include a "statement of material facts" that includes citations to the relevant record materials. Where the moving party has met the threshold burden of supporting the motion, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Not all factual disagreements are material. Factual disagreements that are irrelevant or immaterial under the applicable substantive law do not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Under Local Rule 56.1, the parties opposing summary judgment must in their brief identify specific and material factual disputes in a section labeled "Statement of Material Facts in Dispute." In making this showing, the parties opposing the motion may not rely merely on assertions in pleadings to establish

a genuine issue, but must come forward with evidence that would be admissible at trial.  *Collier v. Budd Co.*, 66 F.3d 886, 892 & n.8 (7th Cir. 1995).  Where an opposing party fails to make this showing, the court must assume that the moving party's stated facts exist without controversy if they are supported by admissible evidence.  Local Rule 56.1(e).

## Undisputed Facts

Plaintiffs' initial brief in response to defendant's motion for partial summary judgment did not comply with Local Rule 56.1 because it did not contain a section entitled "Statement of Material Facts in Dispute."  Plaintiffs requested leave to amend their response brief to comply with Local Rule 56.1 and submitted an amended response.  That request is granted.

Plaintiffs' amended response contains the required section which, pursuant to Local Rule 56.1(e), "responds to the movant's asserted material facts by identifying the potentially determinative facts and factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding summary judgment."  The following facts reflect those matters asserted by State Farm that were supported by admissible evidence and unchallenged by the plaintiffs in their amended response, as well as matters that plaintiffs have asserted with support from admissible evidence, viewing the evidence in the light reasonably most favorable to plaintiffs.

Plaintiff John D. Lummis and his former wife, plaintiff Cynthia MacBeth, were the named insureds on a State Farm home insurance policy covering a home in Jamestown, Indiana.  In early 2003, Lummis resided in the home with his girlfriend Beth Howe, her three children, and her dog.  On February 5, 2003, approximately two years after Lummis and MacBeth had last made a mortgage payment, a state court foreclosed the mortgage on the plaintiffs' home.

On the following day, February 6, 2003, the house was destroyed by fire. The Jamestown Fire Department responded at 11:56 a.m. and extinguished the fire.  The loss was determined to be total.

Lummis reported the loss to State Farm on the day of the fire.  The agent to whom he reported the fire stated that Lummis was nonchalant and cavalier as he reported the fire.  The day after the fire, a State Farm claim representative met with Lummis at the loss site.  State Farm issued an advance payment on the policy with a check for $7000 payable to Lummis and MacBeth.  Lummis forged MacBeth's signature and cashed the check, keeping the funds for himself.

The State Farm policy excluded coverage for damage or loss by a fire intentionally caused or procured by the named insured.  Because Lummis had told the State Farm representative about the recent foreclosure and about his recent divorce, State Farm decided to investigate the cause of the fire.

State Farm hired Mark Culver of Key Fire Investigations to conduct an origin and cause investigation. The Washington Township/Avon Fire Department, the Indiana State Fire Marshal's office, and the federal Bureau of Alcohol, Tobacco and Firearms (ATF) also conducted origin and cause investigations of the fire. The Jamestown Fire Department did not participate in an investigation of the fire to avoid potential conflicts of interest arising from the fact that Lummis was a volunteer firefighter with that department.

Aimee Macaluso was the State Farm claims representative assigned to adjust the claim and to coordinate State Farm's investigation of the fire. Macaluso took recorded statements of Lummis and Howe. She also communicated with investigators from the various outside entities investigating the fire. The fire investigations found in part:

• Lummis was aware of the foreclosure on the house. Howe was aware that Lummis had not made mortgage payments for more than 18 months.

• Howe stated that she was in the house at 10:00 a.m. on the day of the fire. Howe left the house and arrived at the office of her daughter's doctor at around 10:30 a.m. The office was less than four blocks from the house. Howe returned to the house between 11:30 and 11:45 a.m. while the fire was in progress.

• On February 24, 2003, the Avon Fire Department issued its report ruling out all accidental causes of the fire. The author of the report stated that "this fire was caused from open flame applied to readily combustible materials on or near the center of the basement floor. I believe this fire was incendiary."

• On March 3, 2003, Howe failed to appear for a scheduled polygraph test with ATF agent Michael Vergon. Her alibi for missing the scheduled polygraph proved false. Another polygraph test was scheduled.

- Also on March 3, 2003, Key Fire Investigations issued its preliminary report. The preliminary report called the fire "accelerated" and "suspicious in nature," and located the origin of the fire at the center of the basement floor.

- That day, Macaluso apprised Lummis of the progress of the investigations. Lummis informed Macaluso that he intended to purchase the property at the Sheriff's sale with the insurance proceeds.

- Among the debris found in the remains of the house was a red plastic 2.5 gallon gasoline container.  Laboratory analysis of the contents of the container detected "components identifiable as evaporated gasoline and kerosene type product."

- Howe appeared for her rescheduled polygraph test with ATF agent Vergon. On March 13, agent Vergon informed Macaluso that Howe had failed the polygraph test.

- On March 21, ATF agent Vergon issued his fire investigation report .  He also found that the fire was incendiary and started with an open flame in the center of the basement floor.

On April 22, 2003, State Farm took the Examination Under Oath ("EUO")

of Howe.  Howe provided the following information:

- Howe and Lummis met over the internet in July 2001.  Howe and her children moved in with Lummis at his house within the same month.

- Howe received government support in the form of cash assistance and food stamps.

- On the morning of the Fire, Howe and Lummis left the house between 5:30 and 5:45 a.m.   They dropped Howe's daughter off at school.  Shortly after 6:00 a.m. Howe and Lummis purchased gasoline at a local gas station.

- Howe then dropped Lummis off at his place of employment in Indianapolis and then drove to her methadone clinic, also in Indianapolis.  (Howe was undergoing methadone treatment related to an addiction to pain medication.)

- Howe took the methadone at 8:20 a.m. and left the clinic between 9:00 and 9:30 a.m.

- Howe returned to the house at 10:02 a.m.  She walked through several of the rooms, including her daughters' rooms.  The dog was jumping around so she let it outside to relieve itself.  Then she left the house.  She had been in the house less than five minutes and did not go in the basement.  After backing out of the driveway, she saw the dog in her rearview mirror, chasing her.  She let the dog into the car and drove to the office of her daughter's doctor to pick up her daughter.

- Howe and her daughter stopped at Wal-Mart.  A receipt shows purchases made at 11:26 a.m.

- They returned home between 15 and 30 minutes later.  They discovered the fire upon opening the back door.  Howe then went to a neighbor's house and the neighbor called 911.

- Howe then called Lummis at work.  Lummis appeared to her to be unconcerned about the fire.

- Howe later learned that Lummis's boss had offered to give him a ride home after learning about the fire, but Lummis declined, accepting a ride from a friend later in the day.

On May 21, 2003, ATF agent Vergon informed Macaluso that he had turned the case over to the Boone County Prosecutor's office.


On May 22, State Farm took the EUO of Lummis.  Lummis provided the following information:


- On March 28, 2000, Lummis and MacBeth filed for divorce.

- In 2001, Lummis and MacBeth's Chapter 13 bankruptcy proceedings were converted into Chapter 7.

- The divorce decree required Lummis to refinance the home and remove MacBeth's name from the mortgage. It also required him to repay a $3500 debt to MacBeth's parents. He did not fulfill these requirements.

- Lummis and MacBeth have three children, and Lummis has three other children from a previous marriage. Lummis is obligated to pay approximately $1,300 monthly in child support for four of these children. This amount is garnished from his wages.

- Howe and her children moved in with Lummis within two weeks after Howe and Lummis had met over the internet. Lummis was supporting Howe and her children, with help from Howe's food stamps.

- At the time of the fire, Lummis took home about $1,300 per month after his wages were garnished for child support. After monthly living expenses, including payment for Howe's methadone treatment, Lummis had no money left at the end of each month.

- At the time of the fire, Lummis had not made a mortgage payment on the house since February 2001. Lummis had not paid the phone bill and the phone had been shut off. The furnace had been shut off during 2001 due to money owed on the heating bill. Lummis was using kerosene heaters to heat the house.

- A foreclosure hearing was held on February 5, 2003, the day before the fire. Lummis was aware in advance of the scheduled hearing but did not attend. The hearing resulted in the mortgage company receiving summary judgment and a foreclosure decree.

- Lummis and Howe purchased about 14.5 gallons of gasoline at 7:10 a.m. on the day of the fire.

- Lummis had been a member of the Jamestown Volunteer fire Department for approximately seven years.

On June 24, 2003, Lummis's supervisor confirmed for State Farm that Lummis had been at work on the morning of the fire. On July 8, 2003, Mark Culver of Key Fire Investigations informed Macaluso of his belief that the fire had been caused by someone with more than a lay person's knowledge of certain characteristics of gasoline and kerosene when combined. Culver informed

-8-

Macaluso that gasoline ignites quickly and kerosene burns slowly, and that these qualities make the combination of the two liquids a good fire accelerant with capacity to cause maximum damage.  Traces of a gasoline and kerosene mixture were found in the red plastic container at the scene.

Agent Vergon of the ATF also informed Macaluso of his opinions that the use of a combination of accelerants is unusual for a lay person and that the fire had been designed to result in maximum damage.

Key Fire Investigations' final Investigative Report ruled out all accidental causes and reaffirmed the origin of the fire as the center of the basement floor, where combustibles such as clothing and a mattress were found.

On July 10, 2003, the State Fire Marshal's office issued its report, which also found that the fire was set intentionally and started at the center of the basement floor.

On August 7, 2003, Culver issued a supplemental report in response to a request from Macaluso to clarify what he had meant when he described the fire as "suspicious in nature."  Culver's supplemental report stated that the fire resulted from "an intentional human act" and that "All accidental causes for this fire were systematically ruled out."

On August 13, 2003, based on the above information, Macaluso recommended to the State Farm Claim Committee that the claim of Lummis and MacBeth be denied based primarily on the policy provision excluding coverage for losses caused by intentional acts.

On August 20, 2003, the State Farm Claim Committee decided to deny the claim, stating in part that: "Our investigation reveals that it is more probable than not an insured caused or procured a loss to the property for the purpose of obtaining insurance benefits."

Lummis was informed by letter of the denial on August 25, 2003. About a month later, Lummis, through counsel, questioned the basis of the denial letter. State Farm responded that it did not believe that Lummis set the fire, but rather that it was done with his knowledge and consent. State Farm asked Lummis's counsel for any exonerating documentation. State Farm received no exonerating documentation.

On December 16, 2003, Lummis and MacBeth sued State Farm for breach of contract and bad faith denial of an insurance claim.

*Discussion*

I. *Motion to Strike*

State Farm has moved to strike paragraphs 3, 6, 7, and 8 in plaintiffs' "Supplemental Statement of Material Facts in Dispute" in the plaintiffs' surreply brief. State Farm has also moved to strike paragraphs 2-5 and 16-18 of the Affidavit of John D. Lummis submitted in support of plaintiffs' surreply brief. State Farm argues that these paragraphs exceed the scope of a surreply permitted by Local Rule 56.1(d). That rule states:

> If, in reply, the moving party relies upon evidence not previously cited or objects to the admissibility of the non-moving party's evidence, the non-moving party may file a surreply brief *limited to such new evidence and objections,* no later than seven days after service of the reply brief.

Local Rule 56.1(d) (emphasis added).

State Farm submitted new evidence in its reply brief, but the court agrees that the paragraphs enumerated above did not respond to that new evidence. Plaintiffs chose not to respond on this point. For the reasons stated at pages 4 and 5 of State Farm's brief in support of its motion to strike, the motion is granted as to those paragraphs of plaintiffs' surreply and the Lummis affidavit listed above. Accord, *Lloyd v. Rolls-Royce Corp.*, 2003 WL 23101791, *3 (S.D. Ind. 2003) (granting motion to strike surreply and accompanying affidavit to the extent they "exceeded the scope of defendant's newly submitted evidence").

II.     *The Merits*

-11-

In Indiana, an insurance company can be found liable in tort for bad faith denial of payment on an insurance claim.  *Erie Insurance Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993).  To prove bad faith denial, the insured must establish that the insurer denied liability "knowing there is no rational, principled basis for doing so."  *Woodley v. Fields*, 819 N.E.2d 123, 133 (Ind. App. 2004); see also *Hoosier Ins. Co. v. Mangino*, 419 N.E.2d 978, 983 (Ind. App. 1981) (to infer bad faith, there must be an "absence of any reasonable ground" for the denial of payment).  "Poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present."  *Woodley*, 819 N.E.2d at 133, quoting *Colley v. Indiana Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind. App. 1998).

In *Erie*, the Supreme Court of Indiana explained that "in most instances, tort damages for the breach of the duty to exercise good faith will likely be coterminous with those recoverable in a breach of contract action."  622 N.E.2d at 519.  As in most bad faith cases, however, plaintiffs also seek punitive damages for their bad faith claim.  Cplt. ¶ 23.  In Indiana, "the mere finding by a preponderance of the evidence that the insurer committed the tort will not, standing alone, justify the imposition of punitive damages."  *Erie*, 622 N.E.2d at 520.  Punitive damages on a bad faith claim require "clear and convincing evidence that the insurer knew there was no legitimate basis for the denial."  *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002); see also *Erie*, 622 N.E.2d at 520 (stating that proof of bad faith by "clear and convincing

-12-

evidence" is needed to support punitive damages); *McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 870 (7th Cir. 1994) (reversing jury award of punitive damages where evidence of bad faith was insufficient to meet clear and convincing standard of proof, but noting that "[t]he jury could, on the other hand, have found that the denial of coverage was unreasonable and therefore tortious").

Accordingly, the initial inquiry is whether plaintiffs have raised a genuine issue of fact as to whether a tort has been committed. "Only after it is determined that a tort has been committed is the question of punitive damages broached." *Colley*, 691 N.E.2d at 1261 n.2. Thus, the first issue on this motion is whether a reasonable juror could find by a preponderance of the evidence that State Farm denied coverage to Lummis and MacBeth with knowledge that it lacked any reasonable ground for the denial.

This inquiry is distinct from what State Farm will have to prove to defeat the plaintiffs' breach of contract claim. To defeat the breach claim, State Farm will have to prove that Lummis *in fact* caused or procured the fire. *Dean v. Ins. Co. of North America*, 453 N.E.2d 1187, 1194 (Ind. App. 1983). That question is not at issue on this motion. For even if it turned out that State Farm was wrong in its basis for denying the claim and thus was in breach of the insurance contract – a question on which the court states no opinion – State Farm could still be found not liable on the bad faith claim if there was a legitimate, albeit incorrect, basis for believing that Lummis caused or procured the fire. See *Erie*, 622 N.E.2d at

-13-

520 ("That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana.").

State Farm's theory has been that Howe set the fire with the knowledge and consent of Lummis. The plaintiffs concede that State Farm had "ample reason" to suspect that Howe actually set fire to the house. See Pl. Surreply at 9-10. The scope of plaintiffs' bad faith claim is restricted to State Farm's determination that Lummis procured the act of arson.

A.    *Motive*

To infer bad faith from an insurer's denial of payment on a claim, there must be an "absence of any reasonable ground" for the denial; and circumstantial evidence of arson can provide reasonable grounds for denying a claim.  *Mangino*, 419 N.E.2d at 983, 986-87 (Ind. App. 1981).  Circumstantial evidence that the fire was intentionally set and that the insured had both a motive and opportunity to set or procure a fire can support an inference of arson by the insured.  See *Cincinnati Ins. Co. v. Compton*, 569 N.E.2d 728, 729-30 (Ind.  App. 1991); *Dean*, 453 N.E.2d at 1194-95.

State Farm determined that the fire was intentionally set, that Lummis had the financial motive to procure the fire, and that Lummis had the opportunity, with Howe's help, to set the fire.  Plaintiffs' amended response makes clear that the factual dispute on this motion is limited to whether State Farm had any reasonable ground to conclude that Lummis had a motive to procure the fire.

Plaintiffs were granted leave to amend their response to comply with Local Rule 56.1, which required them to identify "factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding summary judgment."  Of the facts listed in plaintiffs' "Statement of Material Facts in Dispute," all but one are facts either derived from or consistent with State Farm's statement of facts not in dispute.  The exception states: "Most importantly, State

-15-

Farm knew that Lummis did not know that the State Farm policy on the House remained in effect even though Lummis had not made mortgage payments for over a year." Amended Response at 5; see also Pl. Surreply at 3, ¶¶ 1-2.

Plaintiffs readily concede that Lummis was in dire financial straits. They argue in essence that without actual knowledge of at least the possibility of insurance coverage, Lummis's financial circumstances, regardless of how dire, would not sustain the inference that he had a motive to procure the fire. However, the question here is not whether Lummis in fact knew or did not know that the house was covered by insurance. The question is whether a juror could find that State Farm had no reasonable ground to believe that Lummis knew the house was covered.

State Farm has submitted admissible evidence that it sent a renewal notice of the insurance coverage to Lummis's residence on or about May 7, 2002. The notice informed Lummis that the insurance policy was in effect from June 28, 2002, to June 28, 2003, and that the mortgagee would pay the premium. Christian Aff. State Farm also points to the fact that Lummis contacted State Farm the day of the fire as supporting its claim of reasonable belief that Lummis was aware of the coverage.

The plaintiffs have not disputed these facts. These facts by themselves gave State Farm a reasonable basis for believing that Lummis was aware of the

coverage and therefore had a motive to procure the fire.  A reasonable jury could not find otherwise, based on those limited facts.  On the other hand, if, despite these facts, State Farm had additional information showing that Lummis was in fact unaware of the coverage, perhaps a jury could find bad faith.

Plaintiffs contend that the undisputed facts show that Lummis did not know that any insurance was in effect at the time of the fire.  Amended Response at 8. For this proposition plaintiffs cite the EUO of Howe, wherein Howe informed State Farm that on the day of the fire Howe, Lummis, MacBeth, and others were standing outside the burned house and, by Howe's account, the following exchange took place between MacBeth and Lummis:

> And [MacBeth] said, "well, do you want to call the adjuster, the insurance adjuster?"
>
> And I remember John [Lummis] saying, "Well, I don't think we have insurance . . . since I haven't paid anything on the house."
>
> And she said, "well you still need to call him, John, you don't know that."

EUO of Howe at 206.

Treating the transcript of the examination under oath as the equivalent of an affidavit that may be used on summary judgment, Howe's sworn statement does not raise a genuine issue of fact about State Farm's knowledge on the issue of motive.  The simple reason is that State Farm was not required to believe Howe.

-17-

Macaluso testified that she did not believe Howe's statements about Lummis's knowledge of the insurance coverage to be truthful.  Macaluso Dep. at 36.  The plaintiffs themselves have described Howe as an "unreliable" source of information for State Farm.  Amended Response at 9.  They have also written:  "Howe, who may have set the fire, who had a substance abuse problem, who failed the lie detector test, . . . who repeatedly has failed to appear for deposition and who presently cannot be located simply cannot be considered anything more than a volatile, ex-girlfriend suspect."  *Id.* at 10.[1]

State Farm's basis for believing that Lummis was aware of the coverage was reasonable in light of the renewal notice and the fact that Lummis contacted State Farm immediately after the fire.  Its basis for not crediting Howe is likewise reasonable in light of the undisputed facts undermining that credibility.  A reasonable juror could not find that Howe's statement rendered unreasonable State Farm's belief that Lummis was aware of the coverage and therefore had financial motive to procure the fire.[2]

_____

[1]Howe is currently incarcerated at the Indiana Women's Prison serving a three-year sentence for neglect of a dependent, which is why she failed to appear for her deposition in this action.  See Docket No. 60.

[2]Plaintiffs have not provided any evidence from Lummis stating that he told State Farm at the relevant time that he did not believe he had coverage.  Plaintiffs' only evidence on the point of State Farm's knowledge about Lummis's belief comes from Howe's EUO, which State Farm certainly was not required to believe.

As noted, plaintiffs amended their response to comply with Local Rule 56.1. They identified only the question of whether Lummis was aware of the coverage (*i.e.*, had motive) as raising a factual dispute precluding summary judgment. Plaintiffs have not raised a genuine issue of material fact on this point. Accordingly, the inquiry turns to whether State Farm is entitled, under the undisputed facts, to judgment as a matter of law.

B.   *Judgment as a Matter of Law*

To prevail on their bad faith claim, the plaintiffs must show the absence of any reasonable ground for State Farm's denial of payment on the plaintiffs' policy. *Mangino*, 419 N.E.2d at 983.   They would also have to show "conscious wrongdoing" by State Farm.   *Woodley*, 819 N.E.2d at 133.

In arguing that they will be able to make this showing, plaintiffs point to several facts, including:

- Lummis had a firm alibi for the time the fire started.  He was at work in Indianapolis.

- Lummis lost irreplaceable property in the fire, such as family photographs and jewelry.

- If Lummis had set or procured the fire, he would have known that his friends and colleagues with the local fire department would have been called upon to face the risks of fighting the fire, which seems unlikely in light of the absence of any other evidence suggesting a grudge or hostility toward other firefighters.

- Although he is a firefighter, Lummis does not have training or knowledge concerning the causes and origins of fire or the effects of combining gasoline and kerosene.

This evidence may be highly relevant in deciding whether State Farm was wrong in determining that Lummis procured the fire, so that it breached its contract with the plaintiffs. But the possibility that a jury could disagree with State Farm's determination will not defeat summary judgment on a bad faith claim. For purposes of this motion, the question on plaintiffs' bad faith claim is whether a juror could find by a preponderance of the evidence that State Farm *knew* it had no rational, principled basis for suspecting that Lummis procured the fire.

Plaintiffs also submit the affidavit of Professor William J. Warfel, Ph.D, CPCU, CLU. Plaintiffs have cited the Warfel affidavit primarily for the propositions (1) that State Farm did not adequately investigate and eliminate the possibility that other people, "known and unknown," had motive and opportunity to set the fire; and (2) that State Farm ignored the possibility that Howe could have acted alone in setting the fire. Pl. Amended Resp. at 14-15.[3]

---

[3]State Farm urges this court to disregard the Warfel affidavit pursuant to Fed. R. Evid. 702. State Farm argues that Dr. Warfel's opinions would not assist the trier of fact and that he is not qualified to render them. Def. Reply at 16. The court disagrees, with the exceptions of Dr. Warfel's psychological profile of Howe, his unsupported speculation that she failed to take her methadone on the day of the fire, and his speculation about the behavior such failure might cause. Dr. Warfel is an insurance expert who is not qualified to opine, for example, that:

Howe has an impulsive personality that would be conducive to acting alone on her frustration and anger. . . . Certainly the possibility exists that she failed to take Methadone per her doctor's orders immediately

(continued...)

As to the first proposition, Dr. Warfel concedes that State Farm had "more than ample basis" to believe Howe actually set the fire. Warfel Aff. at 8. Plaintiffs themselves describe the evidence implicating Howe as "a mountain of facts." Pl. Surreply at 10. In this light, Dr. Warfel's opinion that "State Farm's failure to systematically identify and eliminate people other than Howe who had the motive and perhaps the opportunity to set the fire was vexatious and unreasonable" is irrelevant and speculative argument. See Warfel Aff. at 4. Given the compelling circumstantial evidence that Howe set the fire, the fact that State Farm did not vigorously look for other suspects does not support an inference of bad faith.

As for the second assertion, that State Farm ignored the possibility that Howe acted alone, Dr. Warfel opined that "the record indicates a more than ample basis upon which one could reasonably conclude that Howe acted alone in setting the fire." Warfel Aff. at 7. Dr. Warfel may be correct that "one [*i.e.*, a juror] could reasonably conclude" that Howe acted alone. If so, that juror could find in favor of plaintiffs on the breach claim. But again, on this motion for summary judgment on a bad faith claim, the inquiry is whether a juror could reasonably

---

[3](...continued)
before the fire, which may have hampered her ability to control her frustration and anger. . . . Her emotionally charged outbursts in the immediate aftermath of the fire seems to support this theory. Third, she has character flaws that would suggest an ability to commit an illegal act such as arson on her own volition.

Warfel Aff. at 6-7. These portions of Dr. Warfel's report are disregarded.

-21-

conclude that State Farm lacked any reasonable grounds for believing Lummis procured the fire. The answer to that question is no.

Dr. Warfel concedes that "it is possible that Lummis directed Howe to set the fire." Warfel Aff. at 10. Dr. Warfel also states that "Certainly, in view of the fact that the fire was set intentionally, as well as other factors, State Farm rightfully conducted a thorough investigation for the purpose of determining whether Lummis was involved in the act of arson." *Id.* In the course of that investigation, State Farm determined the following:

- All fire investigators unanimously determined the fire to be incendiary.

- Howe and Lummis purchased gasoline on the morning of the fire.

- Howe removed her dog from the property before the fire.

- Howe and her children were financially dependent on Lummis.

- Lummis was in very dire financial circumstances.

- The day before the fire, the mortgage company obtained a foreclosure decree on the property, and without proceeds from insurance coverage, Lummis would be without means to stop a sheriff's sale.

- State Farm sent renewal notices to Lummis stating that his house continued to be insured despite his not paying on the mortgage.

- Fire investigator Culver and ATF agent Vergon informed State Farm that a lay person would be unlikely to have knowledge of the qualities of a combined accelerant such as gasoline and kerosene.

- Lummis was a firefighter; Howe was not a firefighter.

- Gasoline and kerosene were detected in a container found among the ruins of the fire.

• Lummis did not accept the offer of a ride home upon learning of the fire, but instead waited until later in the day.

• Lummis contacted State Farm the day of the fire.  The agent to whom he spoke described Lummis as nonchalant and cavalier in reporting the fire.

Based on these findings, State Farm had, in the language of *Erie*, 622 N.E.2d at 520, a "rational, principled basis" for concluding  that Lummis procured an intentional act of arson on the covered property.  The fact that State Farm might also have determined that Howe acted alone is not decisive under the standard applied here.  Plaintiffs have offered abundant hypotheses, but State Farm had to make a decision after a thorough investigation.  Plaintiffs have offered no evidence that Howe or someone else acted independent of Lummis so compelling as to render irrational or unprincipled State Farm's determination that Lummis procured the fire.

Plaintiffs essentially are hypothesizing that a more diligent investigation would have uncovered such evidence.  They rely in part on *Gooch v. State Farm Mutual Auto. Ins. Co.*, 712 N.E.2d 38 (Ind. App. 1999), but the case does not help them.  In *Gooch*, the Indiana Court of Appeals reversed a trial court's grant of summary judgment to an insurer on a bad faith claim because a question of fact existed as to whether the insurer intentionally failed to conduct a more extensive investigation of its insured's accident with a hit-and-run driver.

In *Gooch*, the identity of the hit-and-run driver was a decisive issue. The insurer argued that it had a rational, principled basis – a police trace of the license plate – for determining the hit-and-run driver was a man named Stewart. On that basis, the insurer told the insured she would have to file the claim in another state. In opposing summary judgment, the insured provided evidence that her counsel had later provided the insurer with "compelling evidence that Stewart could not have been the hit-and-run driver." *Id.* at 43.[4]

Despite this evidence, the insurer did not investigate further and held to its position that Stewart had been the hit-and-run driver. The court found that the insured had raised a genuine issue of fact as to whether the insurer's "failure to conduct an investigation may have been an intentional act designed to coerce Gooch into a settlement by forcing her to file suit against Stewart in an inconvenient forum." *Id.* at 41. The court further stated:

> While we do not believe that the failure to conduct an adequate investigation always constitutes bad-faith, we do believe that the facts of this case present a genuine issue of material fact as to whether State Farm deliberately failed to conduct an investigation so that they could enforce a provision of Gooch's insurance policy in bad-faith *when they allegedly already knew what a more extensive investigation would have likely disclosed.* Thus, Gooch is not alleging that State Farm negligently failed to conduct an investigation; rather, she is alleging that this failure was an intentional act designed to conceal the true facts underlying her claim.

---

[4] Gooch's counsel notified State Farm that charges against Stewart had been dropped because Stewart had an alibi for the day of the accident and because Gooch's description of the hit-and-run driver did not match a description of Stewart. Also, Stewart's fiancee had reported the license plate stolen before the accident. 712 N.E.2d at 39.

*Id.* (emphasis in original).

*Gooch* is instructive, but the facts are so different as not to help plaintiffs here. In *Gooch*, the insurer "allegedly already knew what a more extensive investigation would have likely disclosed." Thus, a question of fact clearly existed as to whether the insurer had any reasonable or principled basis to refrain from further investigation after learning of the probable mistaken identification of Stewart. These facts would permit an inference of "conscious wrongdoing." *Woodley*, 819 N.E.2d at 133.

In this case, the plaintiffs' speculative hypotheses involving unknown vandals, disgruntled relatives, or Howe acting on her own after missing a dose of methadone are not comparable to the "compelling" factual evidence confronting the insurer in *Gooch.* At most, plaintiffs' speculation might support a claim of negligence, not bad faith. See *Woodley*, 819 N.E.2d at 133; see also *Gooch*, 712 N.E.2d at 41 ("the lack of a diligent investigation alone is insufficient to support a claim of bad-faith"), citing *Erie Insurance v. Hickman*, 622 N.E.2d at 520.

Plaintiffs also offer the affidavit of James Hieston II, Chief of the Jamestown Fire Department. Hieston testified in part:

7.    I have spoken with the fire investigators, from the State Fire Marshal's Office and Mike Jackson of the Washington Township/Avon Fire Department.

8.    I have not seen or been told of any evidence that indicates John D. Lummis caused or participated in the destruction of his home by the fire.

9.    I do not believe that John D. Lummis caused or participated in the destruction of his home by fire, or I would have terminated his employment with the Jamestown Volunteer Fire Department.

10.    I do not believe that the fellow firefighters of the Jamestown Volunteer Fire Department would accept and work with John D. Lummis if they believe he caused or participated in the destruction of his house by fire.

Hieston Aff. ¶¶ 7-10.

State Farm has moved to strike paragraphs 8 through 10 of the Hieston affidavit.  Def. Reply at 18-19.  State Farm contends that paragraph 8 is inadmissible hearsay because Hieston is attempting to testify about what other investigators told him regarding their beliefs about the fire and Lummis's alleged involvement.  Plaintiffs counter, without explanation, that paragraphs 7 and 8 are admissible under Federal Rule of Evidence 803(3), which creates an exception to the hearsay rule for a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition . . . , *but not including a statement of memory or belief to prove the fact remembered or believed* unless it relates to the execution, revocation, identification, or terms of declarant's will.  The statements

of other investigators implied in paragraphs 7 and 8 obviously are not admissible under this exception.

Plaintiffs also argue that the statements of the other investigators are not hearsay because they are offered "to show the effect of the statements on Chief Hieston." Pl. Surreply at 16. That effect is stated in paragraph 9. The statements might be admissible on this limited basis if Chief Hieston's state of mind were relevant. It is not. The issue here is State Farm's state of mind.

To be entitled to summary judgment, State Farm must show that no reasonable juror could find by a preponderance of the evidence that State Farm lacked reasonable grounds for its denial of the payment. State Farm has shown that. Because plaintiffs fail to survive summary judgment on the question of whether State Farm committed the tort, plaintiffs also cannot survive summary judgment on their claim for punitive damages, which imposes the higher standard of clear and convincing evidence. See *Colley*, 691 N.E.2d at 1261 n.2 ("Only after it is determined that a tort has been committed is the question of punitive damages broached."); see generally *Erie Insurance Co. v. Hickman*, 622 N.E.2d at 520 (explaining different standards of proof for liability and for punitive damages on bad faith claims).

*Conclusion*

-27-

State Farm has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on plaintiffs' bad faith claim, including plaintiffs' claim for punitive damages.  State Farm's motion for partial summary judgment is granted.  State Farm's motion to strike portions of plaintiffs' surreply and the affidavit of Lummis is also granted.

So ordered.

Date: June 16, 2005

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Dennis F. Cantrell
BINGHAM MCHALE, LLP
dcantrell@binghammchale.com

Donna C. Marron
PLEWS SHADLEY RACHER & BRAUN
dmarron@psrb.com

David L. Pippen
PLEWS SHADLEY RACHER & BRAUN
dpippen@psrb.com

Tara J. Stapleton
BINGHAM MCHALE LLP
tstapleton@binghammchale.com